IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-HC-2269-FL

| | |
|---|---|
| NEZAR ANTHONY YARBOROUGH, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| ALVIN KELLER, ) | |
| ) | |
| Respondent. ) | |

Petitioner, a state inmate, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter came before the court on motion for summary judgment (DE # 11) pursuant to Federal Rule of Civil Procedure 56 by respondent Alvin Keller ("Keller"), to which petitioner responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants respondent's motion.

**STATEMENT OF THE CASE**

On March 20, 2008, petitioner was convicted in the Nash County Superior Court of first-degree murder, first-degree burglary, first-degree kidnaping, and three counts of second-degree kidnaping. State v. Yarborough, 198 N.C. App. 22, 679 S.E.2d 397, 401 (2009). Petitioner was sentenced to the following consecutive terms of imprisonment: (1) life without parole; (2) two terms of one hundred (100) to one hundred twenty-nine (129) months imprisonment; and (3) three terms of twenty-nine (29) to forty-four (44) months imprisonment. Resp't's Mem. Ex. 3, pp. 40-49.

Following his conviction, petitioner, through counsel, filed an appeal to the North Carolina Court of Appeals. See Yarborough, 679 S.E.2d 397. On July 7, 2009, the court of appeals reversed

defendants' convictions for kidnaping, but found no reversible error in his convictions for first-degree burglary and first-degree murder. Id. at 409. On October 6, 2009, petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court, which was denied on January 28, 2011. State v. Yarborough, 363 N.C. 812, 693 S.E.2d 143 (2010).

On August 18, 2010, petitioner filed a pro se motion for appropriate relief ("MAR") in the Nash County Superior Court. Resp.'t's Mem. Ex. 9. The superior court summarily denied petitioner's motion on September 10, 2010. Id.

On December 28, 2010, petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, petitioner alleges the following: (1) ineffective assistance of trial and appellate counsel; (2) denial of counsel at critical stages of proceedings without a valid waiver; (3) violation of the privilege against self incrimination; and (4) illegal confession. Respondent filed a motion for summary judgment on May 25, 2011, arguing that petitioner's claims are without merit.[1] Petitioner filed a response.

## STATEMENT OF FACTS

The facts as stated by the North Carolina Court of Appeals are summarized as follows:

The State's evidence generally showed the following: In April 2006 Cannon Williams lived at 8863 Medlin Way, in Sharpsburg, North Carolina. During the evening of 17 April 2006 a friend of Williams, Eric Watson, stopped by Williams'[] home after work. About thirty to forty-five minutes later, Williams' cousin, Derek Smith, arrived with Dana Denton. The group watched a movie, Williams and Watson went out for beer, and the four continued visiting in Williams'[] living room.

Without warning, Defendant and Jerry O'Neal entered the trailer. Their faces were covered and Defendant carried a shotgun. Defendant ordered everyone to lie on the

---

[1] Respondent also argues that petitioner's petition is barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requirement that a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). Timeliness, however, is not a jurisdictional prerequisite under the AEDPA. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); Day v. McDonough, 547 U.S. 198, 205 (2006). In this case, the court finds it appropriate to proceed to the merits of petitioner's action.

floor. Defendant went towards a counter separating the living and kitchen areas. Instead of following Defendant's order to lie down, Williams picked up a gun from the kitchen table; the gun appeared realistic, but actually was a BB gun that was incapable of discharging. Williams hit Defendant on the head with the BB gun and attempted to disarm Defendant. Williams and Defendant wrestled over control of Defendant's shotgun, and Smith joined the fight. Defendant fired several shots during his struggle with Williams to retain control of his shotgun. One of these shots struck Smith, killing him.

The State offered testimony from Watson, Williams, O'Neal, and Denton about the shooting. All the eyewitnesses testified that neither they nor Smith had any previous acquaintance with Defendant or O'Neal; that Defendant and O'Neal entered the trailer without permission and ordered those present to lie down; that Williams fought with Defendant for possession of Defendant's gun; and that during the struggle Defendant fired a shot that proved fatal to Derek Smith. The witnesses also agreed that the entire incident took only a few minutes, that O'Neal was unarmed, that Defendant fired several shots during the tussle with Williams, and that Defendant left very shortly after shooting Derek Smith. Law enforcement officers offered statements taken from these witnesses, which corroborated their trial testimony.

Defendant's trial testimony was mostly consistent with that of the State's witnesses. Defendant testified that he and O'Neal went to Williams'[] trailer with the intent to steal cocaine. Defendant carried a fully loaded shotgun. Upon entering the trailer, Defendant told everyone to lie on the ground and went to a kitchen drawer where he had been told to look for cocaine. As he opened the drawer, Williams "jumped him" and the two fought over Defendant's shotgun. During the melee several shots were fired from Defendant's shotgun. One of these shots killed Smith. Defendant testified that he brought the gun to Williams'[] house to scare the victims, but did not intend to harm anyone. He testified that the gun discharged while he was trying to leave the trailer.

Yarborough, 679 S.E.2d at 401-402.

## DISCUSSION

A.    Motion for Summary Judgment

    1.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden

3

of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The standard of review for habeas petitions brought by state inmates, where the claims have been adjudicated on the merits in the state court, is set forth in 28 U.S.C. § 2254(d). That statute states that habeas relief cannot be granted in cases where a state court considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1) and (2). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies it to the facts of the state prisoner's case." Id. at 407. A state court decision also may apply Supreme Court law unreasonably if it extends existing Supreme Court precedent to a new context where it does not apply, or unreasonably refuses to extend existing precedent to a new context where it should apply. Id. The applicable statute

4

> does not require that a state court cite to federal law in order for a federal court to determine whether the state court's decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000), cert. denied, 534 U.S. 830 (2001). Moreover, a determination of a factual issue made by a state court is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

    2.    Analysis

        a.    Ineffective Assistance of Trial Counsel

The Sixth Amendment right to counsel includes the right to the effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must establish a two-prong test. First, petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 687. For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998).

5

####### i. Failure to Request a Jury Instruction on Accident

In his first ineffective assistance of trial counsel claim, petitioner alleges that his trial counsel was ineffective because he failed to request a jury instruction on the defense of accident. Petitioner raised this claim in his direct appeal. The appellate court adjudicated this claim, and found it to be without merit. The court of appeals found as follows:

> Where the death of a human being is the result of accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer." *State v. Phillips,* 264 N.C. 508, 512, 142 S.E.2d 337, 340 (1965) (quoting *State v. Faust,* 254 N.C. 101, 112, 118 S.E.2d 769, 776 (1961)). "The defense of accident 'is triggered in factual situations where a defendant, without premeditation, intent, or culpable negligence, commits acts which bring about the death of another.... It is not an affirmative defense, but acts to negate the *mens rea* element of homicide.'" *State v. Turner,* 330 N.C. 249, 262, 410 S.E.2d 847, 854 (1991) (quoting *State v. Lytton,* 319 N.C. 422, 425–26, 355 S.E.2d 485, 487 (1987)).
>
> However, the defense of accident is unavailable if the defendant was engaged in misconduct at the time of the killing. "The law is clear that evidence does not raise the defense of accident where the defendant was not engaged in lawful conduct when the killing occurred." *State v. Gattis,* 166 N.C.App. 1, 11, 601 S.E.2d 205, 211 (2004) (quoting *State v. Riddick,* 340 N.C. 338, 342, 457 S.E.2d 728, 731 (1995)). "Any defense based on the suggestion that the death was the result of an accident or misadventure must be predicated upon the absence of an unlawful purpose on the part of the defendant." *State v. York,* 347 N.C. 79, 96, 489 S.E.2d 380, 390 (1997) (citations omitted).
>
> In the instant case, it is undisputed that Defendant broke into Williams'[] home with the intent of robbing him, and that the killing occurred within a few minutes of the entry, during a struggle over Defendant's shotgun. Defendant was engaged in misconduct at the time of the shooting, and may not avail himself of the defense of accident. Moreover: the jury specifically found that the underlying felony of [first degree burglary] was committed, which supports defendant's conviction of murder in the first degree on the basis of felony murder. It is well established that "[t]he killing of another human being, whether intentional or otherwise, while the person who kills is engaged in the perpetration of a felony, which felony is inherently or foreseeably dangerous to human life, is murder [.]" ... [Burglary] is such a felony. *State v. Woods,* 316 N.C. 344, 348–49, 341 S.E.2d 545, 547–48 (1986) (quoting *State v. Shrader,* 290 N.C. 253, 261, 225 S.E.2d 522, 528 (1976)) (other citations omitted).
>
> Defendant acknowledges that he broke into Williams'[] trailer intending to steal

6

Case 5:10-hc-02269-FL   Document 19   Filed 02/28/12   Page 6 of 13

drugs and immediately went to the drawer where he believed he would find the drugs. Before Defendant could open the drawer, Williams hit him and tried to disarm him. Defendant concedes that he did not leave the trailer at that point, but instead struggled with Williams for control of Defendant's shotgun. He further admits that the shot that killed Smith was fired during this struggle. Defendant asserts, however, that after he and Williams started fighting, Defendant decided to "abandon" his plan to commit robbery and decided he wanted to leave. Defendant asserts that when he "abandoned" his plan to rob Williams, his right to the defense of accident was thereby " restored." Defendant contends that "there was a break in the sequence and chain of causation" and that because the shooting occurred while Defendant was trying to escape the trailer, it may legally be deemed an accident. We disagree.

Defendant claims that his right to the defense of accident was restored as soon as he decided to leave the trailer and informed Williams of his change of plan. Defendant essentially contends that, because the shooting occurred after he abandoned the plan to pursue the underlying felony of burglary, he is therefore entitled to rely on a defense of accident. In support of this position, Defendant cites several cases addressing the right to *self defense*. None of these cases hold that the defense of *accident* is available to a defendant under these circumstances. Indeed:

> [t]he felony murder rule was promulgated to deter even accidental killings from occurring during the commission of or attempted commission of a dangerous felony. The rationale of the felony murder rule is 'that one who commits a felony is a bad person with a bad state of mind, and he has caused a bad result, so that we should not worry too much about the fact that the fatal result he accomplished was quite different and a good deal worse than the bad result he intended.

*State v. Richardson*, 341 N.C. 658, 666–67, 462 S.E.2d 492, 498 (1995) (quoting *State v. Wall,* 304 N.C. 609, 626, 286 S.E.2d 68, 78 (1982) (Copeland, J., dissenting)).

In addition, Defendant fails to cite authority supporting his position that the facts he has alleged would constitute a legally significant "break in the sequence of events." Defendant asserts that the shooting took place while he was trying to leave the trailer, after Defendant no longer wanted to rob Williams. However, a killing committed while a defendant is trying to flee the scene of a felony is a felony murder.

"A killing is committed in the perpetration or attempted perpetration of a felony within the purview of a felony-murder statute when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide

7

is linked to or part of the series of incidents, forming one continuous transaction."
. . . [E]scape is ordinarily within the *res gestae* of the felony and that a killing
committed during escape or flight is ordinarily within the felony murder rule. *State
v. Squire*, 292 N.C. 494, 511–12, 234 S.E.2d 563, 573 (1977) (quoting *State v.
Thompson,* 280 N.C. 202, 212, 185 S.E.2d 666, 673 (1972), *superseded by statute
as stated in State v. Davis,* 305 N.C. 400, 290 S.E.2d 574 (1982)) (other internal
quotations omitted). In the instant case, it is undisputed that Smith was shot within
a few minutes of the break in. We conclude that, even assuming, *arguendo,* that the
killing occurred after Defendant had decided to abandon the intended robbery and
attempted to leave, this would not constitute a "break" in the events giving rise to the
shooting.

We conclude that Defendant was not entitled to an instruction on the defense of
accident, and that the trial court did not err by failing to give this instruction.
Accordingly, we need not reach the issue of plain error. This assignment of error is
overruled.

Yarborough, 679 S.E.2d at 406-409 (quotations omitted).

"[N]ormally, instructions to the jury in state trials are purely matters of state law and procedure and it is only in circumstances where the instructions impugn fundamental fairness or infringe upon specific constitutional protections that a federal question is presented." Chance v. Garrison, 537 F.2d 1212, 1215 (4th Cir. 1976) (citing Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960)). Here, the court of appeals found that the defense of accident was not available under North Carolina law because petitioner was not engaged in lawful conduct when the killing occurred.[2] See Gattis, 601 S.E.2d at 211. Petitioner has not presented clear and convincing evidence to rebut the presumption that the North Carolina Court of Appeals' factual findings were correct. See 28 U.S.C. § 2254(d)(2) ("An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] The court notes that the court of appeals also determined that petitioner was guilty of felony murder. Premeditation is not an element of felony murder. Frye v. Lee, 89 F. Supp. 2d 693, 724 (W.D.N.C. 2000) (citing N.C. Gen. Stat. § 14-17).

8

proceeding."); Miller-El v. Dretke, 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the presumption of correctness by clear and convincing evidence) (quotation omitted)). Thus, petitioner has failed to demonstrate that his attorney's actions impinge fundamental fairness or that his actions infringed any constitutional protection. Based upon the foregoing, the court finds that petitioner has not demonstrated that his counsel acted unreasonably in deciding not to request such an instruction regarding the accident defense.

Even if petitioner was able to establish that his counsel acted unreasonably, his claim still must fail because he is unable to show prejudice. Petitioner has not presented any evidence to demonstrate that but for his counsel's alleged errors, the result of the proceedings would have been different. Based upon the foregoing, the court of appeals' adjudication of this ineffective assistance of counsel claim did not constitute an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Therefore, respondent is entitled to summary judgment for petitioner's first ineffective assistance of counsel claim.

ii. Concession of Guilt

In his second ineffective assistance of counsel claim, petitioner alleges that his counsel was ineffective for conceding guilt to the jury on his kidnaping and burglary charges. Petitioner raised this claim in his direct appeal. The court of appeals adjudicated this claim, and found it to be without merit. The court of appeals found as follows:

> In the instant case, the evidence was overwhelming that Defendant had committed first-degree burglary. The evidence supporting the kidnaping charge, including Defendant ordering the victims to lie down, was likewise undisputed. The legal argument for setting aside the kidnaping convictions was not based on any conflict in this evidence, but on a legal variance between indictment and evidence. Defense counsel apparently decided that, if Defendant admitted his guilt of burglary and

9

> kidnaping, it might improve his credibility before the jury regarding the actual shooting. It was a reasonable strategy to admit guilt of these offenses for which the evidence was overwhelming, in hopes of establishing greater credibility with the jury regarding the charge of first-degree murder. This assignment of error is overruled.

Yarborough, 679 S.E.2d at 409.

The Fourth Circuit Court of Appeals has held that an attorney's admission of a client's guilt does not automatically constitute deficient performance. Young v. Catoe, 205 F.3d 750, 759 (4th Cir. 2000). Rather, a court must consider "the totality of the circumstances confronting the lawyer in order to accurately evaluate the reasonableness of the conduct at issue." Id. Further, an attorney's tactical decisions are entitled to deference. McDougall v. Dixon, 921 F.2d 518, 537-39 (4th Cir. 1990).

Here, counsel's decision to concede petitioner's guilty for the burglary and kidnaping charges was reasonable in light of the overwhelming evidence of petitioner's guilt for these offenses. Trial counsel's admission of guilt in this situation reasonably could be seen as a tactical strategy to establish credibility with the jury. See Baker v. Corcoran, 220 F.3d 276, 296 (4th Cir. 2000) (citations omitted) (finding there are some circumstances, particularly when there is overwhelming evidence of the defendant's guilt, in which concessions of guilt for an offense may be reasonable and necessary within the context of the entire trial.) Petitioner has not provided any evidence to the contrary. Therefore, petitioner has not demonstrated that his trial counsel acted unreasonably under the circumstances.[3]

---

[3] The court notes that the court of appeals reversed petitioner's kidnaping convictions on the grounds that there was a fatal variance between the indictments for kidnaping and the trial evidence. See Yarborough, 679 S.E.2d at 403. In particular, petitioner was charged with kidnaping for the purpose of facilitating the commission of felony murder. Id. The court of appeals determined that a person cannot kidnap a person for the purpose of facilitating a felony murder. Id. at 403-405. However, the court of appeals found that where a person is charged with kidnaping for the purpose of facilitating a murder, the state must prove the defendant intended to commit a premeditated and deliberate murder. Id. (continued...)

Even if petitioner was able to establish that his counsel acted unreasonably, his claim still must fail because he again is unable to show prejudice. Based upon the foregoing, the court of appeals' adjudication of this ineffective assistance of counsel claim did not constitute an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Therefore, respondent is entitled to summary judgment for petitioner's second ineffective assistance of counsel claim.

b. Ineffective Assistance of Appellate Counsel

Petitioner asserts that he received ineffective assistance of appellate counsel because his appellate counsel failed to timely file a discretionary appeal to the North Carolina Court of Appeals. A defendant has no constitutional right to counsel when seeking discretionary review of a conviction in a state appellate court. See e.g., Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam); Ross v. Moffitt, 417 U.S. 600, 610-12 (1974). Thus, petitioner's appellate counsel was not ineffective, and respondent is entitled to summary judgment for this claim.

c. Remaining Claims

Petitioner's remaining claims include: (1) denial of counsel at critical stages of proceedings without a valid waiver; (2) violation of the privilege against self-incrimination; and (3) illegal confession. These claims essentially are re-statements of petitioner's ineffective assistance of counsel claims. The court granted respondent's motion for summary judgment for petitioner's ineffective assistance of counsel claims. Because petitioner's remaining claims are repetitive of his

---

[3](...continued)
The court of appeals found that the evidence presented at trial in this case was insufficient to establish any specific intent to kill the victim. Id. Thus, the court of appeals reversed petitioner's kidnaping convictions. Id. at

11

ineffective assistance of counsel claims, the court grants respondent's motion for summary judgment as to petitioner's remaining claims.

B.      Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") provides "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Having determined petitioner is not entitled to relief and respondent is entitled to dismissal of the petition, the court considers whether petitioner is nonetheless entitled to a certificate of appealability with respect to one or more of the issues presented in his habeas petition.

A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Where a petitioner's constitutional claims are dismissed on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition [or motion] states a valid claim of denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack, 529 U.S. at 484). "Each component of the § 2253(c) showing is part of a threshold inquiry, and a court may find that it can dispose of the application in a fair and prompt manner if it proceeds

12

first to resolve the issue whose answer is more apparent from the record and arguments." <u>Slack</u>, 529 U.S. at 484-85.

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 11) is GRANTED. The certificate of appealability is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 28th day of February, 2012.

/s/ Louise W. Flanagan
LOUISE W. FLANAGAN
United States District Judge